UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6147 CIV-LENARD/TURNOFF

NIGHT BOX
FILED

JAN 1 9 2001

CLARENCE MADDOX
CLERK USDC / SDFL / MIA

813268 ONTARIO, INC., as
General Partner of OAKLAND
PARK (FLORIDA) LIMITED PARTNERSHIP,
an Ontario limited partnership;
as limited partner of, and on behalf of
OAKLAND LAKES, LTD.,
a Florida Limited Partnership;

        Plaintiff,

v.

OAKLAND LAKES, LTD.,
a Florida Limited Partnership,
WILLIAM O. BRISBEN, W.O. BRISBEN
COMPANIES,INC., and ROBERT E. SCHULER,
as General Partners of OAKLANDS LAKES, LTD.,
THE SECRETARY OF HOUSING AND
URBAN DEVELOPMENT, and
CONDOR ONE, INC., a Delaware Corporation,

        Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF
## FEDERAL DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

I. INTRODUCTION

      Plaintiff filed its Amended Complaint as a limited partner derivative action on

behalf of a Florida limited partnership to set aside a Provisional Workout Arrangement

("PWA"), and for damages. Am. Compl. at ¶ 1. Plaintiff admittedly defaulted on its

original mortgage obligations, id. at ¶ 24, and as a result entered into the PWA, which

became effective on February 1, 1995. See id., Ex. D at 1. However, having accepted the

benefits of the PWA since 1995, Plaintiff now seeks to have the original mortgage terms reinstated, claiming that the general partner of the mortgagor was not authorized to enter into the PWA. Id. at Count I, Prayer for Relief; id. at ¶¶ 27 and 44. Plaintiff also seeks to set aside the May 8, 1995 mortgage assignment, see id. at Exhibit E, from the Secretary of Housing and Urban Development ("HUD" or "Federal Defendant") to co-defendant Condor One, Inc. ("Condor"). Id. at Counts II and III, Prayer for Relief.

Finally, having settled its state court litigation with the former general partners, see Plaintiff's Motion to Amend its Complaint at ¶ 3, and the former general partners having been dismissed from this lawsuit as well by this Court's Order dated August 31, 2000, Plaintiff has now amended its damages claim in Count IV to substitute, in place of the former general partners, Federal Defendant and Condor. Am. Compl. at Count IV.

As will be shown in section III.A, this Court lacks subject matter jurisdiction over this Amended Complaint. First, as will be shown in section III.A.1, Plaintiff lacks standing to sue because it has failed to comply with Florida's statutory requirements pursuant to which this limited partner derivative suit purports to have been brought. In addition, as will be shown in sections III.A.2 and 3, this Court lacks jurisdiction over Plaintiff's Amended Complaint under either diversity jurisdiction or federal question jurisdiction. Finally, as will be shown in section III.B, Plaintiff has also failed to state a claim upon which relief can be granted.

II.    STATEMENT OF RELEVANT FACTS FROM COMPLAINT AND
       ATTACHMENTS
                              Complaint

1.     Oakland Lakes, Ltd., ("Oakland Lakes"), on whose behalf this derivative lawsuit

is brought, is a limited partnership organized and existing under the laws of the State of

Florida.  Am.Compl. ¶ 1.

2.     On or about October 5, 1989, Oakland Lakes obtained from Cincinnati Mortgage

a mortgage loan endorsed for coinsurance by the Secretary of .  Id. ¶ 17.

3.     On or about October 5, 1989, Oakland Lakes commenced construction of an

apartment complex.  Id. ¶ 18.

4.     Almost immediately after completion of the apartment complex, Oakland Lakes

defaulted on its mortgage loan.  Id. ¶ 24.

5.     The mortgage loan was assigned to HUD, and HUD became the mortgagee under

the mortgage loan.  Id. ¶¶ 22-23.

6.     Effective February 1, 1995, HUD and William O. Brisben ("Brisben"), as General

Partner of Oakland Lakes, executed a Provisional Workout Arrangement.  Id. ¶ 26; Ex.

"D."

7.     On or about May 8, 1995, HUD assigned the Oakland Lakes mortgage loan to

Condor One, Inc. ("Condor").  Id. ¶ 29; Ex. "E."

                          Complaint, Exhibit "A"

8.     Oakland Lakes, Ltd. executed an Amended and Restated Renewal Mortgage Note

("Note") on October 5, 1989, in the amount of $22,779,600.00.

9.     The Note provides as follows:

              If default be made in the payment of any installment under this
              Note (or any other amount due under the Mortgage) and if such

                                    3

> default is not made good prior to the due date of the next such
> installment, or if any other Event of Default should occur, then, in
> addition to any other action permitted to be taken by the Holder
> hereunder or under the Mortgage or any other Loan Documents,
> the entire principal sum hereof and accrued interest hereon shall at
> once become due and payable without notice, at the option of the
> holder ....

Note at 4.

10.     The Note also provides as follows:

> The failure to exercise any option to declare the maturity of the
> principal debt or to exercise any other rights under any of the
> covenants or conditions contained in the Loan Documents, shall
> not be taken or deemed to be a waiver of the right to exercise such
> option or to declare such maturity after such past or any
> subsequent violation of any such covenants or conditions.  All
> remedies provided for herein upon any default by the Mortgagor
> shall be cumulative and not exclusive.

Id.

11.     The Note also provides that "[t]his Note and the Mortgage are made and delivered

in and shall be construed in accordance with the laws of the State of Florida." Id. at 6.

12.     William O. Brisben signed the Note as General Partner of Oakland Lakes, Ltd., a

Florida limited partnership. Id. at 7.

<u>Complaint, Exhibit "B"</u>

13.     Oakland Lakes, Ltd. executed an Amended and Restated Renewal Mortgage,

Assignment of Rents and Security Agreement ("Mortgage") on October 5, 1989, in the

amount of $22,779,600.00.

14.     The Mortgage at Section 1.01 <u>Defined Terms</u> defines "Loan Documents" as

> this Mortgage, the Note, the Coinsured Loan Commitment, the
> HUD Regulatory Agreement, the Building Loan Agreement, and
> any other instrument given to evidence or further secure the
> payment or performance of any obligations secured under this
> Mortgage.

4

Mortgage at 4.

15.    The Mortgage at Section 6.02 <u>Acceleration</u> provides as

follows:

> If any Event of Default Shall occur, then at the option and election of the
> Mortgagee, the entire Indebtedness Hereby Secured shall become due,
> payable and collectible at once and thereafter as Mortgagee may elect,
> regardless of the date of maturity and without notice, and may be enforced
> and recovered at once.

<u>Id.</u> at 21.

16.    The Mortgage at Section 7.01 <u>Assignment of Mortgage</u>  provides as follows:

> Subject to any applicable requirements of HUD, Mortgagee may sell,
> assign, transfer, convey, pledge or encumber the Note or all or any
> part of its interest, rights and obligations thereunder or under this
> Mortgage to one or more persons or parties, and Mortgagor hereby
> consents to any such sale, assignment, transfer, conveyance, pledge
> or encumbrance and agrees upon the request of the Mortgagee or its
> assignee to execute and deliver promptly any instrument confirming
> Mortgagor's consent as effectuating, as necessary, such sale,
> assignment, transfer, conveyance, pledge or encumbrance.

<u>Id.</u> at 25.

17.    The Mortgage at Section 7.02 <u>Notices</u> provides in relevant part as follows:

> Any notice, demand or request required or permitted hereunder to
> be given to Mortgagor ... shall be sufficiently given if in writing
> and personally delivered or mailed by registered or certified first
> class mail, postage prepaid, addressed to:
>
> Mortgagor:    Oakland Lakes, Ltd.
>               4750 Ashwood Drive, Suite 300
>               Cincinnati, Ohio 45241
>               Attention: William O. Brisben.

<u>Id.</u>

18.    The Mortgage at Section 7.04 <u>Governing Law</u> provides in relevant part that "[t]he

Note and this Mortgage are made and delivered in and shall be governed by and

construed in accordance with the law of the State [of Florida]. Id. at 27.

19.    The Mortgage at Section 7.12 Binding Effect provides that:

> All the terms, covenants and conditions of this Mortgage shall bind
> Mortgagor, its partners and their respective heirs, successors and
> assigns and shall inure to the benefit of and be available to the
> mortgagee, it successors and assigns.

Id. at 30.

### Complaint, Exhibit "C"

20.    The Oakland Lakes, Ltd. Second Amended and Restated Agreement of Limited

Partnership ("Partnership Agreement") states in relevant part in Section 1.3 Powers and

Purposes, as follows:

> (a)  The purposes of the Partnership and the business to be carried
> on and the objectives to be effected by it are:
>
>         (1)  To acquire and purchase the [apartment complex] and to
> construct, own, develop, maintain and operate the [apartment
> complex].
>                                    * * *
>         (4)  To borrow money, and to issue evidence of
> indebtedness and to secure the same by mortgage, deed of trust,
> pledge or other lien ....
>         (5)  To carry on any other activities necessary to, in
> connection with or incidental to the foregoing.

21.    The Partnership Agreement states in relevant part in Section 3.2 Powers of

General Partners, as follows:

> The General Partners shall have all necessary powers to carry out
> the purposes, business and objectives referred to in Section 1.3,
> and shall possess and enjoy all the rights and powers of Partners of
> a partnership without the limited partners except as otherwise
> provided by Florida law and by this Agreement ....

22.    The Partnership Agreement states in relevant part in Section 3.3 Exercise of Rights

and Powers by General Partners, as follows:

> Any one or more of such General Partners is and are authorized to enter into or execute any document or instrument for and on behalf of the Partnership.

23.    The Partnership Agreement states in relevant part in Section 3.4 Special Duties

and Obligations of General Partners, as follows:

> (a) In addition to their usual and customary duties and obligations the General Partners shall perform the following special duties and obligations:

> (1)  The General Partners shall use their best efforts to cause the Partnership at all time to perform and comply substantially with the provisions of the Mortgage Loan.

24.    The Partnership Agreement states in relevant part in Section 3.6 Reliance on Act

of General Partners, as follows:

> No financial institution or any other person, firm or corporation dealing with the General Partners shall be required to ascertain whether they are acting in accordance with this Agreement, but such financial institution or such other person, firm or corporation shall be protected in relying solely upon the deed, transfer, or assurance of and the execution of such instrument or instruments by such General Partners.

25.    The Partnership Agreement states in Section 10.4 Applicable Law, as follows:

> This Agreement and the rights of the Partners shall be governed and construed and enforced in accordance with the law of the State of Florida.

26.    The Partnership Agreement states in relevant part in Section 14.1 Power, as

follows:

> Except to the extent otherwise required by Florida law, each of the Limited Partners, including the Investor Limited Partner, irrevocably constitutes and appoints the General Partner, jointly and severally, with full power of substitution, his or its true or lawful attorney or in his or its name, place and stead, to make, execute, swear to, acknowledge, deliver and file:

7

***

      (b) ... by way of extension and not in limitation, to do all such other things as shall be necessary to continue and to carry on the business of the partnership.

27.     The Partnership Agreement states in relevant part in Section 15.1 <u>HUD and Coinsuring Lender Requirements</u>, as follows:

> The Partnership is authorized to execute the Note and Mortgage in order to obtain the Mortgage Loan to be coinsured by the Coinsuring Lender and HUD and to execute a certain regulatory agreement ("Regulatory Agreement") between the Partnership and the Coinsuring Lender and such other documents as may be required by the Coinsuring Lender and/or HUD in connection with said Mortgage Loan.

28.     The Partnership Agreement states in relevant part on the Limited Partner Signature Page (pp. 43-44) for the "OAKLAND PARK (FLORIDA) LIMITED PARTNERSHIP," as follows:

> The undersigned, desiring to become the Investor Limited Partner of Oakland Lakes, Ltd. (the "Partnership"), hereby agrees to all of the terms of the Agreement of Limited Partnership of the Partnership (the "Agreement") and agrees to be bound by all of the terms and provisions thereof. The undersigned further constitutes and appoints the General Partners of the Partnership, jointly and severally, with full power of substitution, its true and lawful attorney for it in accordance with Article 14 of the Agreement. The power of attorney herein granted shall be deemed to be coupled with an interest and shall be irrevocable.

29.     "Oakland Park (Florida) General Partner Ltd., an Ontario corporation" executed the Limited Partner Signature Page on behalf of "OAKLAND PARK (FLORIDA) LIMITED PARTNERSHIP."

30.     The name of Plaintiff "813268 Ontario, Inc." does not appear in the Partnership Agreement, as general partner of OAKLAND PARK (FLORIDA) LIMITED PARTNERSHIP, or in any other capacity.

8

Complaint, Exhibit "D"

31.     Oakland Lakes and HUD entered into a Provisional Workout Arrangement

("PWA"), with an effective date of February 1, 1995 and an expiration date of January 1,

2001.

32.     The PWA states in the opening unnumbered paragraph as follows:

> The undersigned mortgagor [Oakland Lakes, Ltd.] hereby
> expressly acknowledges that the Mortgage and Note secured by the
> [Lakes of Casablanca] project is in default.  To afford an
> opportunity to effect reinstatement, the Secretary, Department of
> Housing and Urban Development, will hold the defaulted Note and
> Mortgage on the subject project under the terms and conditions
> stated herein.

PWA at 1.

33.     The PWA states in section 1 Possession that "[t]hemortgagor acknowledges that

the default entitles HUD to assume possession to the encumbered premises, but that

possession has not been demanded." Id. at 1.

34.     Under the terms of the PWA, from February 1, 1995 through January 31, 1997,

Oakland Lakes was only required to pay seventy percent of the interest otherwise payable

under the terms of the note.  Id. at § 3.a.1.

35.     From February 1, 1997 through January 31, 1998, Oakland Lakes was only

required to pay eighty percent of the interest otherwise payable under the terms of the

note.  Id. at § 3.a.2.

36.     From February 1, 1998 through January 31, 1999, Oakland Lakes was only

required to pay ninety percent of the interest otherwise payable under the terms of the

note.  Id. at § 3.a.3.

37.     Section 6 of the PWA provides for a possible mortgage modification if Oakland

Lakes complies with the requirements of the PWA. Id. at 6.

38.     Upon sale or refinancing of the Lakes of Casablanca project, twenty-five and one quarter (25.25) percent of the proceeds "shall be paid by Maker to Mortgagee or its successors and assigns." Id. at § 7.

39.     Section 11 of the PWA, "Cancellation Clause," provides in part as follows:

> This Arrangement is on a month-to-month basis. The Secretary agrees to take no action because of the existing monetary default, provided that the mortgagor remits the required monthly payment and satisfactorily performs the other requirements of this Arrangement.

Id. at § 11.

40.     The PWA contains no prohibition against HUD assigning the mortgage on the Lakes of Casablanca project. Id.

41.     William O. Brisben signed the PWA as General Partner of Oakland Lakes, Ltd., on December 22, 1994. Id. at Signature Block.

Complaint, Exhibit "E"

42.     On May 8, 1995, HUD executed an Assignment of Amended and Restated Renewal Mortgage, Assignment of Rents and Security Agreement and Other Collateral Loan Documents ("Assignment") in favor of Condor One, Inc.

43.     The assignment expressly excluded the Regulatory Agreement. Assignment at 2.

Complaint, Exhibit "F"

44.     On April 29, 1999, the law firm of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., wrote a letter (the "letter") to Mr. William O. Brisben on behalf of 813268 Ontario, Inc.

45.     The letter represented that 81326 Ontario was the new general partner of the

Oakland Park (Florida) Limited Partnership.  Letter at 1.

46.    The letter stated that Mr. Brisben was not authorized as general partner to enter

into the PWA.  Id.

47.    The letter did not indicate that a copy was sent to HUD and/or Condor.  Id.

Complaint, Exhibit "1"

48.    Oakland and HUD entered into a Regulatory Agreement dated October 5, 1989,

with respect to the Lakes of Casablanca project.

49.    The Regulatory Agreement provides that it "will continue so long as the contract

of coinsurance remains in force."  Regulatory Agreement at 1.

50.    The Regulatory Agreement provides in subsection 1.c. of section B.

OBLIGATIONS OF OWNER, as follows:

> c. Owner acknowledges that, in order to prevent or cure a
> default, the Mortgagee may . . . use Reserve Funds to pay amounts
> due under the Mortgage.  If the Mortgage debt is accelerated
> pursuant to a default under the Mortgage, the Owner agrees that
> the Mortgagee may apply the balance in such Reserves for
> Replacements to the amount due on the mortgage debt, as
> accelerated.

Id. at 4.

51.    The signature page to the Regulatory Agreement  provides as follows:

> Before me, a Notary Public in and for said County, personally
> appeared William O. Brisben, who, as general partner of Oakland
> Lakes, Ltd., a Florida limited partnership, who acknowledged to
> me that he did sign the foregoing instrument in the name of and on
> behalf of said partnership, and that the same is his free act and
> deed and the free act and deed of said partnership and that he was
> duly authorized to execute said instrument by the partnership.

Id. at signature page.

III. ARGUMENT AND CITATION OF AUTHORITY

A. <u>THIS COURT DOES NOT HAVE JURISDICTION OVER THIS COMPLAINT AGAINST FEDERAL DEFENDANT</u>

1. <u>PLAINTIFF HAS NO STANDING TO SUE</u>

Plaintiff's Amended Complaint states that Plaintiff's lawsuit "is a limited partner derivative action pursuant to Florida Statute Section 620.163 ...." Am. Compl. ¶ 1. Plaintiff must rely upon this Florida statute for standing to sue, because limited partners ordinarily cannot bring derivative actions on behalf of a partnership.[1]  As stated in <u>Bankston v. Burch</u>, 27 F.3d 164, 167 (5th Cir. 1994),

> [l]imited partners have less management responsibility for the partnership than its general partners.  With that reduced responsibility and exposure to liability come reduced individual rights. 'It is well settled,' a New York federal court recently observed, 'that the only direct lawsuit against general partners that a limited partner can bring in an individual, non-representative capacity consists on an action for an accouting.'

Furthermore, the limited partnership is an indispensable party under a limited partnership derivative action.  <u>See</u>, <u>e.g.</u>, <u>Bivens Gardens Office v. Barnett Banks of Florida</u>,  140 F.3d 898, 909-10 (11th Cir. 1998).  Plaintiff, as a limited partner, has standing with respect to its derivative claims only if it sues the limited partnership as a defendant and if it complies with the other requirements of the Florida law through which standing is conferred on limited partners.[2]  Section 620.163, upon which Plaintiff solely relies, states as follows:

> A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do

---

1 Since the rights of the limited partnership are being asserted here, it appears that the pursuit of this action violates the automatic stay resulting from the Chapter 11 petition filed by the limited partnership in Case No. 00-25351-BKC-RBR.  <u>See</u>, <u>e.g.</u>, <u>In re: The Gainesville Venture, Ltd.</u>, 159 B.R. 810, 812 (Bankr. S.D. Oh. 1993)

2 The Amended Complaint does not disclose why Plaintiff continues to assert a derivative claim.  In the introduction, the Amended Complaint states that the Plaintiff "sues THE SECRETARY OF HOUSING AND URBAN DEVEOPMENT, and CONDOR ONE, INC.," and no relief is sought against the Oakland Lakes, Ltd., limited partnership.

so have refused to bring the action or if an effort to cause those general partners to bring an action is not likely to succeed.

West's F.S.A. § 620.163.

For such a derivative action, the Florida statute further imposes a clear pleading requirement that Plaintiff has not met, and cannot meet, based on the allegations in its Amended Complaint. This requirement is found under § 620.165, "Derivative action; pleading," which states as follows:

> In a derivative action, the complaint must set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort.

Id., § 620.165.

Contrary to the express requirement of Florida law conferring standing upon limited partners to bring derivative actions, Plaintiff's Amended Complaint demonstrates no effort to secure initiation of the instant action by the general partner, nor does the Amended Complaint disclose any reason why such effort was not made. Instead, the Amended Complaint states as follows:

> 37. Subsequent to and as a part of the settlement of the State Court Action, Oakland Park G.P. Corporation became the new General Partner of Oakland Lakes. Oakland Park G.P. Corporation consents to and supports this action.

Am. Compl. ¶37. (emphasis added).

As discussed above, the Florida Statute authorizing limited partnership derivative suits makes it clear that the complaint must allege that the partnership will not bring the suit. According to Plaintiff's own Amended Complaint, the general partner actually supports the instant lawsuit. Therefore, Plaintiff lacks standing, and Plaintiff's Amended Complaint must be dismissed for failure to comply with the clear, express requirements

of Florida law through which limited partners are granted standing to bring derivative actions on behalf of the limited partnership.

### 2. NO DIVERSITY JURISDICTION EXISTS

Plaintiff asserts diversity of citizenship jurisdiction in Paragraph 4 of the Amended Complaint. However, for purposes of federal diversity jurisdiction, the partnership itself is considered a citizen of every state of which a general or a limited partner is a citizen. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96, 110 S.Ct. 1105, 1021, 108 L.Ed.2d 157 (1990).

Under Carden, the limited partnership, Oakland Lakes, Ltd., on whose behalf this action purports to have been brought, is a citizen of, at a minimum, Florida and the Province of Ontario, Canada. Because the limited partner bringing the derivative action, Oakland Park, is a citizen of Ontario, complete diversity of citizenship does not exist. Therefore, this action must be dismissed if there are no other grounds for jurisdiction.

### 3. NO FEDERAL QUESTION JURISDICTION EXISTS

Plaintiff asserts in paragraph 3 that federal question jurisdiction is proper in that this action arises under the laws of the United States. However, Plaintiff has raised no federal questions in its complaint. The only questions raised involve the construction of various contractual documents, which by their terms are to be construed under the law of the State of Florida.

The Note attached to the Amended Complaint provides that "[t]his Note and the Mortgage are made and delivered in and shall be construed in accordance with the laws of the State of Florida." The Mortgage at Section 7.04 Governing Law provides in relevant part that "[t]he Note and this Mortgage are made and delivered in and shall be

14

governed by and construed in accordance with the law of the State [of Florida]    And finally, the Partnership Agreement states in Section 10.4 <u>Applicable Law</u>, as follows: "[t]his Agreement and the rights of the Partners shall be governed and construed and enforced in accordance with the law of the State of Florida."

The central issue in Plaintiff's state law derivative limited partner derivative claim is whether Mr. Brisben possessed actual or apparent authority in connection with the execution of the PWA. As such, the rules of Florida contract law bind the District Court in this case. <u>See</u>, <u>e.g.</u>, <u>Bivens Gardens Office v. Barnett Banks of Florida</u>, 140 F.3d 898, 905 (11th Cir. 1998). Unlike <u>Industrial Indemnity, Inc. v. Landrieu</u>, 615 F.2d 644, 647 (5th Cir. 1980) or <u>133-24 Sanford Ave. Realty Corp. v. Cisneros</u>, 940 F.Supp. 83, 85 n.2 (S.D.N.Y. 1996), rights and obligations under the National Housing Act ("NHA"), 12 U.S.C. § 1701 <u>et seq.</u>, are in no way implicated, nor is resort to federal common law appropriate.[3]

B.    <u>PLAINTIFF HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>

In evaluating a motion to dismiss, a district court must view the complaint in the light most favorable to the plaintiff. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974). A complaint may not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Bank v. Pitt</u>, 928 F.2d 1108, 1111-12 (11th Cir. 1991)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

---

3 As will be shown in Section III.B of this memorandum, although Count IV does reference the Regulatory Agreement, Plaintiff's claims with respect to the Regulatory Agreement are, as a matter of law, totally frivolous and devoid of any merit whatsoever.

In its evaluation, this Court should consider the exhibits that Plaintiff has attached to its Amended Complaint. As stated in <u>Breckenridge Creste Apartments v. Citicorp</u>, 826 F.Supp 460, 464 (N.D. Ga. 1993)

> To determine whether to grant a Rule 12(b)(6) motion to dismiss, the court primarily considers the allegations in the pleadings, although exhibits attached to the complaint may also be taken into account. <u>Case v. State Farm Mutual Auto. Ins. Co.</u>, 294 F.2d 676 (5th Cir. 1961); <u>Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Publishing Co.</u>, 340 F.Supp. 993, 995 (M.D. Fla.), <u>aff'd</u>, 468 F.2d 824 (5th Cir. 1972), <u>cert. denied</u>, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973).

Plaintiff has attached to its Amended Complaint all of the relevant documents in support of the allegations in its Amended Complaint. Under Florida law, which should be applied here, construction of these documents should ordinarily be a question of law for the trial court, so long as the terms of the contract are unambiguous. <u>Bivens Gardens Office v. Barnett Banks of Florida</u>, 140 F.3d 898, 905 (11th Cir. 1998).

As will be shown, Plaintiff's conclusory allegations to the contrary notwithstanding, the Oakland Lakes limited partnership agreement clearly authorized Federal Defendant to rely upon Mr. Brisben's execution of the PWA to bind the Oakland Lakes limited partnership entity. Likewise, all other complained of actions by Federal Defendant and Condor were clearly and unambiguously authorized by the various attached exhibits attached to the Amended Complaint.

### <u>COUNTS I & II</u>

Count I seeks to have the PWA declared "invalid and of no effect" as a result of the failure to "obtain the prior written consent and authority of certain of the other general and limited partners." Am. Compl. ¶ 44. Count II is also based on the allegedly unauthorized execution of the PWA, and seeks to have the mortgage assignment from Federal Defendant

16

to Condor set aside due to that allegedly unauthorized execution. Id. ¶ 51.  Contrary to the conclusory allegations in the Amended Complaint, which does not even reference any particular provisions in the limited partnership agreement, the Oakland Lakes limited partnership agreement clearly demonstrates that Federal Defendant was unquestionably entitled to rely on Mr. Brisben's negotiation and execution of the PWA on behalf of Oakland Lakes.

The Oakland Lakes, Ltd. Second Amended and Restated Agreement of Limited Partnership ("Partnership Agreement") states in relevant part in Section 1.3 Powers and Purposes, as follows:

> (a)  The purposes of the Partnership and the business to be carried on and the objectives to be effected by it are:
>
>    (1)  To acquire and purchase the [apartment complex] and to construct, own, develop, maintain and operate the [apartment complex].
>
>                    * * *
>
>    (4)  To borrow money, and to issue evidence of indebtedness and to secure the same by mortgage, deed of trust, pledge or other lien ....
>       (5)  To carry on any other activities necessary to, in connection with or incidental to the foregoing.

Am. Compl., Ex. "C."(emphasis added).

Thus, the Oakland Lakes partnership was clearly and  expressly authorized to engage in borrowing money and activities in connection with such borrowing.

Further, Mr. Brisben was clearly authorized in his sole capacity to undertake this authorized business on behalf of Oakland Lakes. The Partnership Agreement states in relevant part in Section 3.3 Exercise of Rights and Powers by General Partners, as follows:  "Any one or more of such General Partners is and are authorized to enter into or execute any document or instrument for an on behalf of the Partnership." Id. (emphasis added).

17

If there could possibly exist any doubt as to Federal Defendant's entitlement to rely upon Mr. Brisben's authority, several other partnership provisions would remove any such doubt. The Partnership Agreement states in relevant part in Section 3.6 <u>Reliance on Act of General Partners</u>, as follows:

> No financial institution or any other person, firm or corporation dealing with the General Partners shall be required to ascertain whether they are acting in accordance with this Agreement, but such financial institution or such other person, firm or corporation <u>shall be protected in relying solely upon the deed, transfer, or assurance of and the execution of such instrument or instruments by such General Partners.</u>

<u>Id.</u> (emphasis supplied).

There is even an additional provision authorizing reliance by Federal Defendant. The Partnership Agreement states in relevant part in Section 15.1 <u>HUD and Coinsuring Lender Requirements</u>, as follows:

> The Partnership is authorized to execute the Note and Mortgage in order to obtain the Mortgage Loan to be coinsured by the Coinsuring Lender and HUD and to execute a certain regulatory agreement ("Regulatory Agreement") between the Partnership and the Coinsuring Lender <u>and such other documents as may be required by the Coinsuring Lender and/or HUD in connection with said Mortgage Loan.</u>

<u>Id.</u> (emphasis supplied).

Furthermore, Oakland Park, the limited partner that brought this derivative state law action, granted an irrevocable power of attorney to Mr. Brisben as general partner. The Partnership Agreement states in relevant part on the Limited Partner Signature Page (pp. 43-44) for the "OAKLAND PARK (FLORIDA) LIMITED PARTNERSHIP," as follows:

> The undersigned, desiring to become the Investor Limited Partner of Oakland Lakes, Ltd. (the "Partnership"), hereby agrees to all of the terms of the Agreement of Limited Partnership of the Partnership (the "Agreement") and agrees to be bound by all of the terms and provisions

thereof. <u>The undersigned further constitutes and appoints the General
Partners of the Partnership, jointly and severally, with full power of
substitution, its true and lawful attorney for it in accordance with Article
14 of the Agreement. The power of attorney herein granted shall be
deemed to be coupled with an interest and shall be irrevocable.</u>

<u>Id.</u> (emphasis supplied).

Although Federal Defendant was clearly entitled to rely upon the above excerpted

limited partnership provisions as conclusive authority that Mr. Brisben was authorized to

bind the limited partnership by his execution of the PWA, the Florida Revised Uniform

Limited Partnership Act (1986) ("RULPA") further supports Federal Defendant's reliance.

Section 620.186 of the RULPA provides that "[i]n any case not provided for in this act, the

provisions of the Uniform Partnership Act and the rules of law and equity shall govern."

West's F.S.A § 620.186 (1992). The Uniform Partnership Act ("UPA"), § 620.60(1)

provides as follows:

(1) Every partner is an agent of the partnership for the purpose of its
business. The act of every partner, <u>including the execution in the partnership
name of any instrument</u>, for apparently carrying on in the usual way the
business of the partnership of which he is a member, binds the partnership,
<u>unless the partner so acting has in fact no authority to act for the partnership
in the particular matter, and the person with whom he is dealing has
knowledge of the fact that he has no authority.</u>

<u>Id.</u> at § 620.60(1)(emphasis supplied).

As discussed above, acquiring and operating an apartment complex and borrowing

money are included in the express powers of the Oakland Lakes limited partnership, and Mr.

Brisben was clearly authorized under the partnership documents to execute the PWA on

behalf of Oakland Lakes. However, even assuming for the sake of argument that Mr.

Brisben was not so authorized, Plaintiff has not alleged that it ever notified Federal

Defendant, between December 22, 1994, when Mr. Brisben executed the PWA on behalf of

Oakland Lakes, and the date of service of the instant lawsuit, that Plaintiff construed the partnership documents as not authorizing Mr. Brisben to execute the PWA.

Indeed, the April 29, 1999 letter to Mr. Brisben, attached to the Amended Complaint as Exhibit F, appears to have been the first time that Plaintiff, as the newly appointed general partner of Oakland Park, asserted Mr. Brisben's alleged lack of authority. This letter does no contain any indication that Plaintiff provided Federal Defendant with a copy, nor has Plaintiff alleged that Plaintiff communicated, prior to the commencement of this lawsuit, its interpretation regarding Mr. Brisben's alleged lack of authority. Therefore, under both the literal terms of the Oakland Lakes limited partnership agreement, as well as under the Florida RULPA and UPA, Federal Defendant was entitled to rely upon Oakland Lakes' execution of the PWA by its general partner, with the result necessarily being that Counts I and II fail to state a claim upon which relief can be granted.

## COUNT III

Count III is based on the theory that Federal Defendant was required by the terms of the PWA to hold the note and mortgage, rather than assigning it to Condor. This theory is clearly not supported by any reasonable interpretation of the documents involved.

First, the PWA expressly contemplates the possibility of an assignment. Section 7 twice states that the "equity kicker" "shall be paid by Maker to Mortgagee or its successors and assigns." Am. Compl, Ex. D § 7 (emphasis added).

Second, the Mortgage at Section 7.01 Assignment of Mortgage expressly provides for assignment, as follows:

> ... Mortgagee may sell, assign, transfer, convey, pledge or encumber the Note or all or any part of its interest, rights and obligations thereunder or under this Mortgage to one or more persons or parties, and Mortgagor hereby consents to any such sale, assignment, transfer, conveyance, pledge

> or encumbrance and agrees upon the request of the Mortgagee or its assignee
> to execute and deliver promptly any instrument confirming Mortgagor's
> consent as effectuating, as necessary, such sale, assignment, transfer,
> conveyance, pledge or encumbrance.

Id., Ex. B at 25.  The Amended Complaint even references two prior assignments of the note

and mortgage.  See, e.g., id. ¶¶ 24-25.

     Third, the PWA itself does not "according to its own terms, [require] HUD to

hold the mortgage," as alleged in the Amended Complaint.  Id. ¶ 56.  The language

referenced in ¶ 55 plainly uses the permissive word "will," and not the mandatory word

"shall."  The PWA clearly also lacks any express prohibition against HUD assigning the

mortgage.

     That Federal Defendant did not commit to a long term arrangement is further

illustrated by Section 11.  Section 11 "Cancellation Clause," provides in part as follows:

> This Arrangement is on a month-to month basis.  The Secretary agrees to
> take no action because of the existing monetary default, provided that the
> mortgagor remits the required monthly payment and satisfactorily
> performs the other requirements of this Arrangement.

Id. at § 11.

     The PWA cannot reasonably be read as imposing requirements upon Federal

Defendant, which was simply affording Plaintiff an opportunity to avoid foreclosure as a

result of the ongoing mortgage default by Plaintiff.  Further, Plaintiff has not alleged that

it complied with the PWA. Therefore, Plaintiff's conclusory allegation that Federal

Defendant could not assign the Note and Mortgage is clearly erroneous as a matter of

law, and Count III accordingly should be dismissed as to Federal Defendant.

<u>COUNT IV</u>

Count IV relies upon the alleged continuing existence of the Regulatory Agreement, which Plaintiff recognized was not assigned to Condor. <u>See</u> Am. Compl. ¶ 66. However, Plaintiff's conclusion that the Regulatory Agreement "remained with HUD" is unquestionably wrong in light of the terms of the Regulatory Agreement, as construed by two recent district court decisions.

The Regulatory Agreement provides that it "will continue so long as the contract of coinsurance remains in force." Am. Compl., Ex. 1 at 1. Plaintiff's mortgage was converted from coinsurance to full insurance on January 31, 1992. <u>Id.</u> ¶ 23. Subsequently, the mortgage was assigned to HUD. <u>Id.</u> ¶ 25.

The precise issue of when the Regulatory Agreement for co-insured loans ceases to operate has been addressed by at least two federal district courts, which reached somewhat different conclusions, neither of which supports Plaintiff's position. In <u>United States v. David</u>, 1998 WL 351693 at 4, Motion for Reconsideration Denied, 1998 WL 709292 (E.D. Penn. 1998), the court found that the Regulatory Agreement was unambiguous and therefore expired when the contract of coinsurance was converted to full insurance.

In <u>United States v. Schlesinger</u>, 88 F.Supp.2d 431, 440 (D. Md. 2000), however, the court disagreed with <u>David</u> and found that the Regulatory Agreement was ambiguous and that "the RA is fully enforceable against [mortgagor] notwithstanding the conversion of the Project Mortgage from HUD's coinsurance program to its full insurance program." Significantly, the court in <u>Schlesinger</u> found that Regulatory Agreement remained enforceable only as long as "the insurance obligation was still extant." <u>Id.</u> At 447.

Even under the <u>Schlesinger</u> decision, by which the Regulatory Agreement survived for the longest duration, once HUD paid the mortgage insurance claim and became the mortgagee, the insurance obligation expired, and the Regulatory Agreement ceased to be enforceable.   Moreover, even if were assumed that the Regulatory Agreement had continued in effect, which it did not, the United States Court of Appeals for the Federal Circuit has recently stated that "[a]lthough the regulatory agreement was signed on behalf of the Owner and HUD, it was the <u>Owner who assumed obligations under the agreement.</u>"  <u>Cienega Gardens et al. V. United States</u>, 162 F.3d 1123, superceded by 194 F.3d 1231, 1241 (Fed. Cir. 1998) <u>cert.</u> Denied, <u>Sherman Park Apts. V. United States</u>, 528 U.S. 820, 120 S. Ct. 62 (1999) (emphasis added).

Accordingly, because the Regulatory Agreement had expired by the time of the assignment of the mortgage to Condor, and because, in any event, it as Plaintiff, and not HUD, that assumed obligations under the Regulatory Agreement, Plaintiff's allegation that HUD owed it a continuing duty under the Regulatory Agreement after the mortgage was assigned to Condor fails as a matter of law .4

IV. <u>CONCLUSION</u>

Plaintiff's complaint against Federal Defendant should be dismissed because this Court lacks jurisdiction over Plaintiff's claim against Federal Defendant, and because Plaintiff has failed to state a claim against Federal Defendant upon which relief can be granted.

---

4 If Plaintiff genuinely believed that the Regulatory Agreement continued in effect, Plaintiff would not have made unauthorized distributions for legal fees, thereby subjecting Plaintiff and it partners to severe penalties.

23

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY


BY: _____
WILLIAM C. HEALY
Assistant U.S. Attorney
Florida Bar No. 0848395
99 N.E. 4th Street
Miami, Florida 33132
TEL: (305) 961-9438
FAX: (305) 530-7139


OF COUNSEL:
JUD E. McNATT
Trial Attorney
U.S. Department of Housing
and Urban Development
40 Marietta Street, SW
Atlanta, GA 30303-2806

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 19th day of January 2001, to David W. Trench, Esq., Bilzin Sumberg Dunn Price & Axelrod, L.L.P., 2500 First Union Financial Center 200 South Biscayne Boulevard, Miami, Florida 33131; and Robert E. Messick, Esq., Icard, Merrill, Cullis, Timm, Furen & Ginsberg, P.A. 2033 Main Street, Suite 600, Sarasota, Florida 34237.

WILLIAM C. HEALY
Assistant U.S. Attorney