

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6147-CIV-LENARD/Turnoff

813268 ONTARIO, INC, AS GENERAL            )
PARTNER OF OAKLAND PARK (FLORIDA           )
LIMITED PARTNERSHIP, AN ONTARIO            )
LIMITED PARTNERSHIP OF AND ON              )
BEHALF OF OAKLAND LAKES. LTD.,             )
A FLORIDA LIMITED PARTNERSHIP,             )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )
                                           )
                                           )
THE SECRETARY OF HOUSING                   )
AND URBAN DEVELOPMENT, AND                 )
CONDOR ONE, INC., A DELAWARE               )
CORPORATION,                               )
                                           )
        Defendants.                        )
_____)

## DEFENDANT HUD'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND FACT DISCOVERY DEADLINE

The defendant, the Secretary of Housing and Urban Development (hereinafter "HUD"), by

and through the undesigned Assistant United States Attorney, files its response to Plaintiff"s Motion

to Extend Fact Discovery Deadline and states as follows:

1.      This Court entered an Order Adopting Joint Scheduling Report which set February

15, 2001 as the day on which all fact discovery must be completed.

2.      Plaintiff, by its Motion To Extend Fact Discovery Deadline, is in essence not seeking

an extension of time in which to complete its discovery but is seeking to expand its case to include

a class action with different claims than those in its Amended Complaint.

3.      On August 31, 2000, while this instant case was pending before this Court, Plaintiff filed a voluntary petition For Chapter 11 in the United States Bankruptcy Court for the Southern District of Florida, Case No. 00-25351-BKC-RBR.

4.      On December 4, 2000, Plaintiff filed a Notice of Removal with this Court, thereby removing this cause to United States Bankruptcy Court. Defendant HUD filed a Motion To Dismiss but before that motion could be heard, the bankruptcy Court dismiss the petition on Defendant Condor One's Motion To Dismiss as a "bad faith filing." See attached Memorandum Opinion Dismissing Case As Bad Faith Filing And Granting Relief From Stay.

5.      On January 9, 2001, the bankruptcy Court issued its Order remanding this case back to this Court.

6.      Plaintiff by his motion seeks, not an extension of time based upon a delay caused by the filing of the aforementioned petition for bankruptcy and its subsequent bad faith dismissal, but rather to explore the possibility of  bringing a class action against HUD based on unfounded speculation that somehow the Provisional Workout Agreement entered into between HUD and Condor One in 1995 has application to the hundred of other work out agreements negotiated by HUD and other parties.

7.      The core elements of Plaintiff's complaint are that the Provisional Workout Agreement entered into between HUD and Condor One should be rescinded because Oakland Lakes general partner was without authority to bind Oakland Lakes.  Furthermore, that the accompanying assignment of the Note and Mortgage from HUD to Condor One is void.  Finally, Plaintiff seeks damages from HUD and Condor One for the improper use of funds in a replacement reserve without

properly maintaining the apartment complex.

8.    As is blatantly obvious, the gravamen of the complaint is the general partner's authority to enter into the Provisional Workout Agreement. None of the information sought by Plaintiff is at all germane to the issues raised in their Complaint. The general partners authority to enter into this agreement is specific to this case. It is the primary theory upon which Plaintiff brings this case. Additionally, an interpretation of the terms of the Provisional Workout Agreement between the parties are governed by that document, not by agreements reached in hundreds of other loans. Likewise, the use of any replacement reserves is similarly determined from the documents associated with this transaction and no other transactions.

9.    Plaintiff characterizes this request as a "mammoth undertaken." It is and the amount of time and resources necessary to conduct this discovery is mammoth and it is not reasonably calculated to lead to the discovery of admissible evidence in this case pursuant to F.R.Civ.P. 26(b)(1). This request also is premised upon some vague allegation of wrongdoing on the part of Condor One and HUD, an allegation which HUD and Condor One emphatically deny

10.    At the time of filing, the instant motion HUD is simultaneously filing its Motion To Dismiss the Amended Complaint which HUD believes is case dispositive. It is requested that this Court rather than allowing this "mammoth undertaking" to proceed deny the motion or, in the

alternative, at least defer ruling on Plaintiff's Motion to Extend Fact Discovery Deadline until such time as a decision is made upon Defendant HUD's Motion To Dismiss.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
WILLIAM C. HEALY
Assistant United States Attorney
Florida Bar No. 0848395
99 N.E. 4th Street
Miami, Florida 33132
TEL: (305) 961-9438
FAX: (305) 530-7139

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 19th day of January 2001, to David W. Trench, Esq., Bilzin Sumberg Dunn Price & Axelrod, L.L.P., 2500 First Union Financial Center 200 South Biscayne Boulevard, Miami, Florida 33131; and Robert E. Messick, Esq., Icard, Merrill, Cullis, Timm, Furen & Ginsberg, P.A. 2033 Main Street, Suite 600, Sarasota, Florida 34237.

WILLIAM C. HEALY
Assistant U.S. Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                      CASE NO. 00-25351-BKC-RBR

OAKLAND LAKES, LTD.,                        CHAPTER 11

          Debtor.
_____/

### MEMORANDUM OPINION DISMISSING CASE AS BAD FAITH FILING AND GRANTING RELIEF FROM STAY

THIS MATTER came before the Court for hearing on October 25 and November 2, 2000, upon the Motion by Condor One, Inc. ("Condor One") to Dismiss Petition for Bad Faith, or, Alternatively, for Relief from Stay (the "Motion to Dismiss"; CP 11) and the Debtor's response thereto (the "Response to Motion to Dismiss"; CP 38); and the Debtor's Emergency Motion for Authority to Use Cash Collateral on a Preliminary Basis and Request for Final Hearing (the "Motion to Use Cash"; CP 3), Condor One's Response to the Debtor's Motion for Use of Cash Collateral and Motion to Prohibit Use of Cash Collateral and for Adequate Protection (the "Motion to Prohibit Use of Cash"; CP 5), and the Debtor's response thereto (CP 8).

The Court, having considered the Motions and the Responses to each, having reviewed the court file and having heard argument of counsel, and being otherwise fully informed in the premises, hereby makes the following findings of fact and conclusions of law:

## PROCEDURAL BACKGROUND

On August 31, 2000 (the "Petition Date"), Oakland Lakes, Ltd.
(the "Debtor") filed its petition for relief under Chapter 11 of
the Bankruptcy Code. The Debtor operates as a debtor in possession
pursuant to Sections 1107 and 1108 of the Bankruptcy Code.   The
following day,  the Debtor filed its Motion to Use Cash Collateral,
requesting preliminary, and thereafter final, authority to use cash
pursuant to a budget to be provided.   In opposition, Condor One
filed its Motion to Prohibit Use of Cash Collateral, to which the
Debtor filed its Response on September 11, 2000(the "Response to
Motion to Prohibit Use of Cash").

Based upon agreement of Condor One and the Debtor, on
September 25, 2000, the Court entered the Agreed Order on
Preliminary Use of Cash, authorizing the Debtor to expend cash in
accordance with the budget attached thereto on a preliminary basis.
Condor One filed its Motion to Dismiss on September 14, 2000 and
the Debtor filed its response to this Motion on October 23, 2000.
On the following day, the Debtor filed its Disclosure Statement for
Plan of Reorganization.

## FINDINGS OF FACT

The Debtor is a limited partnership organized and existing
under the laws of the State of Florida.  The Debtor's sole business

is ownership of the Sailboat Pointe Apartments, a 376-unit apartment project located in Fort Lauderdale, Florida (the Property). The Property (and claims in respect thereof) is the Debtor's sole asset. To finance the development of the Property, the Debtor executed (i) the Amended and Restated Renewal Mortgage Note dated October 5, 1989, in the original principal amount of $22,779,600 (the "Note") and (ii) the Amended and Restated Renewal Mortgage, Assignment of Rents and Security Agreement dated October 5, 2000 (the "Mortgage"; the Note and the Mortgage, as well as such other documents and agreements executed in connection therewith are collectively referred to as the "Loan Documents), each in favor of Cincinnati Mortgage Corporation.

Cincinnati Mortgage Corporation defaulted under a guarantee agreement with the Government National Mortgage Corporation in November 1990, and all of the Loan Documents were ultimately delivered or assigned to the Secretary of Housing and Urban Development ("HUD"), which then became the holder of the Loan Documents. Almost immediately after completing construction of the Property, the Debtor defaulted in one or more of its obligations under the Loan Documents. The Debtor's monetary defaults were not cured and continue to exist.

As a result of the Debtor's defaults under the Loan Documents,

the Debtor and HUD entered into a Provisional Workout Arrangement (the "PWA"), a month-to-month forbearance arrangement. Under the PWA, HUD agreed to take no action on the defaulted Loan provided that the Debtor made specified minimum monthly payments and performed other requirements thereunder. The PWA did not amend or modify the Note or Mortgage; rather, it specifically sets forth that failure to remit a payment would be cause for the holder to proceed with foreclosure.

The Debtor's Limited Partners received an executed copy of the PWA within months of its execution. In addition, the fact of the Debtor's default under the Loan Documents and the execution of the PWA were continuously reported by the Debtor's certified public accountant in the Debtor's annual audited financial statements which were furnished to Limited Partners and to Condor One. The Debtor performed under the terms of the PWA for five years until control of the Debtor changed in late June 2000.

HUD assigned the Note and Mortgage to Condor One on May 8, 1995, and this assignment was recorded on May 11, 1995 in Broward County. One of the Debtor's limited partners commenced a derivative action against Brisben, HUD and Condor on January 31, 2000, seeking to set aside the PWA as well as the assignment of the Loan Documents from HUD to Condor. That action is currently

pending in the District Court for the Southern District of Florida, Case Number 00-6147-C1V-LENARD (the "District Court Action"). The Debtor announced its intention to remove that action to the Bankruptcy Court pursuant to Bankruptcy Rule 9027, however, this Court is advised that the Plaintiff has made a demand for jury trial which this Court may not be able to hear.

In the District Court Action, the Debtor seeks a determination that the PWA is of no force and effect; that the purported assignment of the Loan Documents and PWA from HUD to Condor is a nullity; and that the original terms of the Loan Documents be reinstated, with the Mortgage reverting to HUD. It is the Debtor's contention that Condor is not its secured lender. Furthermore, Condor has the right to "put" the loan back to HUD should it appear that any representation made by HUD concerning the validity of the PWA be false.

In 1998, certain Canadian Limited Partners contacted Anchor Securities ("Anchor"), a brokerage firm, for assistance with their investment in the Debtor. In turn, Anchor contacted Peak Equity Corp. ("Peak") for its assistance. Sol Roter serves as president of Peak. Eventually, Peak and Anchor formed 813268 Ontario, Inc., which became the general partner of Oakland Park, solely in consideration for its efforts on behalf of the Canadian investors.

The limited partners commenced a derivative action against Brisben in Broward County Circuit Court. The parties ultimately entered into a Settlement Agreement (the "Settlement Agreement") which provided for a change in control and management of the Debtor. The Settlement Agreement required Brisben and his affiliates to transfer their interest in the Debtor to the limited partners if certain financial conditions were not met. Effective June 30, 2000, at a cost of $100, the Brisben parties transferred their interest in the Debtor to the limited partners and management and control of the Debtor changed.

From June 1995 through June 2000, the Debtor remitted all required payments to Condor One. Immediately upon the change in ownership, the Debtor refused to make any further payments to Condor One despite having sufficient income from the Property to do so.

Subsequent to the Debtor's failure to make the July 2000 payment under the PWA, Condor One received no assurances from Mr. Roter, the Debtor's new spokesperson, that the Debtor intended to remit the July, 2000 PWA payment. Accordingly, on July 14, 2000, Condor One served upon the Debtor, through Mr. Brisben, a demand letter reciting the Debtor's defaults, asserting Condor One's rights under the Loan Documents and the PWA, accelerating all

amounts due and payable under the Note, and, pursuant to F.S.A. §697.07, demanding all rents, income and profits (the "Rents") from and of the Property.

Copies of the demand were also furnished to Oakland Park's counsel and others. It is without dispute that the notice was received by the Debtor's new general partner on or about the day it was provided. The Debtor still has not remitted the July, 2000 payment or any subsequent payments under the PWA.

The Debtor ignored Condor One's notices to remit Rents payable. Instead, during the period July through August, 2000, Mr. Roter directed the Property manager to utilize Rents to make payments to insiders, including Peak, Anchor, Oakland Park and their counsel, aggregating more than $300,000. As a consequence of the Debtor's payments to insiders, the Debtor was unable to pay its vendors and other creditors holding unsecured claims, which would have otherwise been paid on the Petition Date. As of the Petition Date, such claims, which the Debtor does not dispute, were the Debtor's only unpaid obligations save the Debtor's indebtedness to Condor One.

On August 24, 2000, Condor One filed a complaint (the "Complaint") against the Debtor, styled Condor One, Inc. v. Oakland Lakes, Ltd., Case No. 00-014108 (18), in Broward County Circuit

Court, seeking to foreclose the Mortgage and Note and to enforce the assignment of Rents (the "State Court Action"). That same day, in the State Court Action, Condor One filed its Emergency Motion to Appoint Receiver and for Turnover of Rents Pursuant to Florida Statutes 697.07 (the "Motion to Appoint Receiver").

On August 31, 2000, the day of the scheduled emergency hearing on the Motion to Appoint Receiver, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. The record clearly indicates that this action was undertaken primarily for the purpose of preventing Condor One from obtaining the appointment of a receiver.

The Debtor estimates the value of the Property between $21,000,000 to $24,000,000. According to the Debtor's financial statements, as well as the testimony on behalf of Condor One, the total debt due under the Note and Mortgage exceeds $25,540,000. While the Debtor disputes this amount, it does not dispute that the value of the Property is less than the amount owed under the Loan Documents.

## CONCLUSIONS OF LAW

Section 1112(b) of the Bankruptcy Code empowers the Court, upon application of an interested party, to dismiss a case under Chapter 11 for cause. Numerous courts, including the Eleventh

Circuit, have held that cause for dismissal includes a debtor's bad faith filing of its petition for relief. _Phoenix Piccadilly, Ltd._ _v. Future Fed. Savings Bank of Louisville, Kentucky et al._ (In re _Phoenix Piccadilly, Ltd.)_, 849 F.2d 1393, 1394 (11th Cir. 1988); _Westbrook v. Albany Partners, Ltd._ (In re _Albany Partners, Ltd.)_, 749 F.2d 670, 674 (11th Cir. 1984). _See also_ _Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc._ (In re _Dixie Broadcasting, Inc.)_, 871 F.2d 1023, 1026 (11th Cir. 1989). "[G]ood faith is an implicit prerequisite to filing a Chapter 11 bankruptcy petition." _In re IAMEC Funding, Inc._, 234 B.R. 539, 542 (Bankr. M.D. Fla. 1999) (citation omitted).

The courts have identified numerous factors which are conducive to a finding of bad faith. In _Phoenix Piccadilly_, the Eleventh Circuit enumerated the following non-exclusive factors that courts should consider in making such a determination:

1. Whether the debtor has only one asset;

2. Whether the debtor has few unsecured creditors, whose claims are small in relation to the claims of secured creditors;

3. Whether the debtor has few, if any, employees;

4. Whether the debtor's single asset is the subject of court action;

4.   Whether the debtor's single asset is the subject of court action;

5.   Whether the debtor's financial problems involve essentially a two-party dispute which can be resolved in state court litigation; and

6.   Whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

Phoenix Piccadilly, 849 F.2d at 1394-95.

In this case, each of the foregoing factors weighs heavily in favor of dismissal.

### Whether the debtor has only one asset

Indisputably, the Property is the Debtor's sole asset.

### Whether the debtor has few unsecured creditors, whose claims are small in relation to the claims of secured creditors

According to the Debtor's Schedules and Statement of Financial Affairs, unsecured claims aggregate approximate $171,000. The Debtor's secured obligation exceeds $25,540,000. The value of the Property and thus, the value of any claim secured by the Property, does not exceed the sum of $24,000,000. Moreover, all of the Debtor's unsecured claims could and would have been paid in full had the Debtor not commenced this case.

### Whether the debtor has few, if any, employees

The Debtor has no employees.    Mr. Roter is solely a

spokesperson. The Debtor has retained the services of Icorr Properties, Inc. ("Icorr") exclusively to operate and manage the Property. The significance of this factor, of course, is whether the dismissal of the case may jeopardize the employment of a significant number of wholly innocent employees.

Where an entity has no employees, courts have determined that protection of the bankruptcy laws is not proper because there are no employees to protect. The Sixth Circuit in Winshall Settlor's Trust, 758 F.2d at 1137, aptly noted that [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. See In re Dolton Lodge Trust No. 35180, 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre . . .." In re Ironsides, Inc., 34 B.R. 337, 339 (Bankr.W.D.Ky.1983), cited in Matter of Little Creek Development Co. 779 F.2d 1068, 1073 (5th Cir. 1986).

Even if it is assumed that the Property manager's employees should be deemed employees of the Debtor for this purpose, the dismissal of the case should have little impact on the continued employment of those employees by the current or any successor

Page 11 of 18

manager or owner of the Property since it must be presumed that the Property will continue to be operated in any scenario.

**Whether the debtor's single asset is the subject of court action**

The State Court Action and the District Court Action were pending at the Petition Date. Both actions solely relate to the Property and indebtedness under the Note and Mortgage secured by the Property.

**Whether the debtor's financial problems involve essentially a two-party dispute which can be resolved in state court litigation**

Despite the Debtor's attempts to implicate HUD and others in litigation, at this juncture, the Debtor's financial problems solely involve two parties, the Debtor and Condor One. Each of the issues raised by the Debtor in its defense against Condor One's motion to dismiss are implicated or raised in the District Court Action and the State Court Action.

**Whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights**

The timing of the Debtor's filing evidences a clear intent to delay and frustrate the legitimate efforts of Condor One to enforce its rights under the Loan Documents in the State Court Action. As amply indicated in the record, the Debtor has admitted that it filed its petition for relief under Chapter 11, on the same day as

the scheduled hearing to appoint a receiver in the State Court Action, to avert the outcome of that hearing. Even the Property manager is unaware of any reason other than the dispute between the Debtor and Condor One for the Debtor's bankruptcy filing.

### Other Factors

In addition to the foregoing, other factors weigh in favor of the dismissal of the Debtor's Chapter 11 case.

### The Debtor lacks equity in its single asset

The Debtor estimates that the Property has a value between $21,000,000 to 24,000,000. Condor One claims to be owed $25,540,000. While the Debtor's schedules list the debt to Condor One as disputed, the amount in dispute was not clear from the Debtor's evidence. Furthermore, while the Debtor may be hopeful that the value of the Property will increase in the future, in part because of its ability to increase rents, the pertinent inquiry is whether any meaningful equity in the Property existed as of the Petition Date. Therefore, on the basis of the record before the Court, the Debtor appears to lack any meaningful equity in the Property.

### Transfers to Insiders and Their Professionals

During the period July 1 through August 31, 2000, the Property manager, at Mr. Roter's direction, made payments to Peak and

Anchor. These payments, allegedly in reimbursement of legal fees incurred in connection with the following: litigation involving the former general partner; to Oakland Park purportedly for the same purpose; to Oakland Park's counsel for fees incurred for such legal actions, as well as for future legal services. The total of such payments exceeded $300,000 and were made from Rents. The vast majority of such payments occurred after Condor One's Notice of Default and demand for Rents. As a consequence of these payments, the Debtor could not pay its vendors and unsecured creditors on August 31, 2000, as it ordinarily would have before bankruptcy. The Debtor failed to make any payments to Condor One under the PWA in July and August, 2000.

As the Court observed in <u>Midway Investments</u>, 187 B.R. at 389-90, transfers to equity interest holders prior to bankruptcy (in that case, some seven months before the petition date) "provides the most salient evidence of bad faith." The Debtor asserts that the Plan and Disclosure Statement which it filed on the eve of this hearing are evidence of its good faith and ability to reorganize. The Court is unpersuaded by this assertion for several reasons.

First, the filing of a plan is insufficient to overcome the existence of the numerous factors which weigh heavily in favor of dismissal of this case. The Eleventh Circuit in <u>Phoenix Picadilly</u>

RAYMOND  B.  RAY            ID:301-554-8916            DEC 11'00    12:58 No.001 P.17

omitted the filing of a plan and the ability of a debtor to reorganize from its list of factors indicating a good faith filing. This is suggestive of the relative unimportance of these factors.

In addition, a plan cannot be confirmed unless it has been proposed in good faith. 11 U.S.C. 1129(a)(3). It would be incongruous to conclude that while a Chapter 11 petition may have been filed in bad faith, a plan in such a case can meet the section 1129(a)(3) good faith requirement for confirmation purposes. Chapter 11 reorganization is not possible if the case should not have been before this Court in the first instance.

Finally, the Plan filed in this instance does not appear to be confirmable. The proposed plan does little to resolve the Debtor's principal problem since, under the Plan, the Debtor's obligation under the Loan Documents continues to depend on the outcome of the District Court Action. The Debtor's Plan also appears to separately classify Condor One's deficiency claim and this may engender assertions of gerrymandering. In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990). Furthermore, this separate classification may violate the absolute priority rule under 11 U.S.C. §1129(b)(2). Bank of America Nat'l Trust and Savings Assn. v. 203 North LaSalle Street Partnership, 119 S.Ct. 1411 (1999). It appears that the Debtor's reorganization is altogether dependent

910 'd.                                      TV LƎ ƆЯƎ8WNS NIZꞀIᗺ    85:91 (ƎNL)00 ᄅ⇂-ʼƆƎᗡ

upon obtaining a reduction of Condor One's claim either by agreement or through litigation; neither of which is imminent.

Condor One is entitled to relief from stay for cause, pursuant to 11 U.S.C. §362(d)(1), and may continue prosecuting the State Court Action. Dixie Broadcasting, Inc., 871 F.2d at 1026; In re Double W Enters., Inc., 240 B.R. 450, 453 (Bankr. M.D. Fla. 1999) ("The Eleventh Circuit Court of Appeals has long recognized that a debtor's lack of good faith constitutes cause for the dismissal of a case . . . and also cause for granting relief from the automatic stay pursuant to §362(d)(1)"). The factors constituting bad faith for purposes of dismissal of a bankruptcy case and relief from the automatic stay are the same. See, e.g., Dixie Broadcasting, 871 F.2d at 1026-27.

As a result of the timing of the Debtor's filing, Condor One was deprived of its hearing to appoint a receiver to collect Rents. To restore the parties to the pre-petition status quo, Condor One seeks immediate and complete relief from the automatic stay, under 11 U.S.C. §§ 362(d)(1) and 105(a), to permit Condor One to prosecute the State Court Action to the fullest extent permitted by applicable law and reschedule appropriate hearings while dismissal becomes final. Such relief is appropriate to prevent the Debtor from depleting Rents collected to date and to protect Condor One's

interest in such Rents.

## CONCLUSION

The Court finds that the Debtor filed its petition for relief under Chapter 11 in bad faith. As such, dismissal of the case and immediate stay relief are the appropriate. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1.     Condor One's Motion For Relief From Automatic Stay is **GRANTED**. Condor One may continue prosecuting the State Court Action, pursuant to 11 U.S.C. § 362(d)(1), effective immediately upon the date of this order.

2.     Condor One's Motion to Dismiss is **GRANTED**. The captioned main bankruptcy case is dismissed, pursuant to 11 U.S.C. §1112(b), with prejudice, effective 10 days from the date of this order.

3.     Final approval of the Motion to Use Cash and the Motion to Prohibit Use of Cash are **DENIED** as moot.

4.     Except as may be agreed to by the Debtor and Condor One, the Debtor's further use of Condor One's cash collateral is **PROHIBITED**.

5.     All pending Motions are **DENIED** as moot.

RAYMOND B. RAY                    ID:301-533-8916                    DEC 11'00    12:59 No.001 P.20

DONE AND ORDERED in the Southern District of Florida on
_December 11, 2000_

RAYMOND B. RAY
United States Bankruptcy Judge

Copy to:

Assistant United States Trustee
51 S.W. First Avenue
Room 1204
Miami, FL 33130

Scott L. Baena, Esq.
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131

Glenn D Moses, Esq
100 SE 2 St #3600
Miami, FL 33131

**Attorney Baena is hereby directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service with the clerk of court.**

P.020                                                BILZIN SUMBERG ET AL                    DEC.-12.00(TUE) 16:59

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 19th day of January 2001, to David W. Trench, Esq., Bilzin Sumberg Dunn Price & Axelrod, L.L.P., 2500 First Union Financial Center 200 South Biscayne Boulevard, Miami, Florida 33131; and Robert E. Messick, Esq., Icard, Merrill, Cullis, Timm, Furen & Ginsberg, P.A. 2033 Main Street, Suite 600, Sarasota, Florida 34237.

WILLIAM C. HEALY
Assistant U.S. Attorney